Hillsborough
No. 87-097

Dana Patterson, Inc.

v.

Town of Merrimack

March 10, 1988

*Gregory E. Michael P.A.*, of Merrimack (*Gregory E. Michael* on the brief and orally), for the plaintiff.

*Bossie, Kelly & Hodes P.A.*, of Manchester (*Robert F. Bossie* on the brief and orally), for the defendant.

Batchelder, J.  The plaintiff, Dana Patterson, Inc., appeals a decision of the Superior Court (*Pappagianis*, J.) granting defendant Town of Merrimack's motion for summary judgment and upholding the town's levy of a land use change tax under RSA 79-A:7 (Supp. 1987). We affirm.

In 1981 and 1983, the plaintiff purchased three adjoining tracts of land encompassing approximately 65 acres in Merrimack. One of the parcels, which contained about 25 acres, was under current use taxation, RSA ch. 79-A, at the time of purchase. The plaintiff in 1983 consolidated the three tracts as part of a subdivision plan, and successfully proposed to the Merrimack planning board a plan for a cluster housing development, a permitted use under the Merrimack zoning regulations. TOWN OF MERRIMACK ZONING ORDINANCE § 3.07 (1986). The development, known as Ravencroft, contains 69 residential units and open space as required by the zoning regulations. ZONING ORDINANCE § 3.07(12). Each residential unit owner owns a one-sixty-ninth interest in the open land. To meet partially the open space requirement, the plaintiff committed the acreage from the former current use parcel as open space. In addition, that acreage was used to satisfy the density requirement under the zoning regulations. *See* ZONING ORDINANCE § 3.07(4) (requiring 40,000 square feet of land area for each unit in the development).

The current use portion remained physically unaltered until 1984, when the plaintiff installed a sewer line across it to service the residential units. The town accepted the sewer line on July 12, 1984. According to the facts presented to us, the current use parcel now contains only the underground sewer line. No buildings, either existing or planned, are on that portion of the development. On January 21, 1985, the town assessed a land use change tax, RSA 79-A:7, I, of $9400 against the plaintiff on the ground that the installation of the sewer line changed the use of the parcel under RSA 79-A:7, IV.

On February 6, 1985, the plaintiff filed a request for an abatement of the tax with the Merrimack board of selectmen. The request was denied, and the plaintiff petitioned the superior court for review of the denial pursuant to RSA 79-A:10 and RSA 76:17 (Supp. 1987). In ruling upon motions for summary judgment filed by both parties, in which the parties agreed to the pertinent facts, the trial court concluded that the installation of a sewer line on current use land to service a cluster residential development on a contiguous parcel is a change in use under RSA 79-A:7, IV(a). The trial court thus found that the imposition of the land use change tax was proper, and granted the town's motion for summary judgment. The plaintiff's subsequent motion to reconsider was denied, and this appeal followed.

■■ The sole issue in this appeal is whether the current use portion of the 65-acre development underwent a sufficient change in use of the land to justify the imposition of the land use change tax. The current use taxation statute was enacted to promote the preservation of open land in the State by allowing qualifying land to be taxed at a reduced rate based on its current use value as opposed to the value of a more extensive use. RSA 79-A:1; *Appeal of Town of Peterborough*, 120 N.H. 325, 329, 414 A.2d 1292, 1295 (1980); *Frost v. Town of Candia*, 118 N.H. 923, 924, 396 A.2d 336, 336–37 (1978). RSA 79-A:2 defines, among other things, the various types of lands that qualify for current use tax treatment. The statute operates as a disincentive to intensify the productive use of land. *See* RSA 79-A:1. Where current use land is put to productive use, however, and no longer qualifies for the reduced tax rate, the owner is subjected to a land use change tax of "10 percent of the full and true value" of the land. RSA 79-A:7, I. This tax permits a town or city to recapture some of the taxes it could have collected had the land not been in current use. *Appeal of Town of Peterborough supra*. Among other things, a change in use occurs, and the land use change tax becomes payable, when:

> "Actual construction begins on the site causing physical changes in the earth, such as building a road to serve existing or planned residential, commercial, industrial, or institutional buildings; or installation of sewer, water, electrical or other utilities or services to serve existing or planned residential, commercial, industrial, institutional or commercial buildings; or excavating or grading the site for present or future construction of buildings; or any other act consistent with the construction of buildings on the site . . . ."

RSA 79-A:7, IV(a).

The parties present this case as one of statutory interpretation. The plaintiff argues that the installation of the sewer line across the current use parcel to serve the residential units on that portion of the property not under current use is not a change in use of the land as contemplated by RSA 79-A:7, IV(a). The plaintiff contends that the language "installation of sewer . . . to serve existing or planned residential . . . buildings" is to be read as a part of the entire provision. As such, the plaintiff argues, the existing or planned buildings to be served by the sewer line must be "on the site," which is in turn to be read as the current use portion of the property. Since the buildings in this case are not on that portion of the land, the plaintiff claims that the mere installation of the

sewer line is an insufficient change in use to trigger the tax assessment.

The town argues that, as a matter of statutory construction, the installation of the sewer line on current use land in and of itself is enough to constitute a taxable change in use. In the town's view, the buildings that the sewer line serves need not be on the current use portion; rather, it is sufficient that they be on a contiguous parcel. The town argues that the "on the site" requirement does not apply since the sewer line installation clause is the only clause in paragraph IV(a) which does not contain that language. The town concludes that it is clear from the language of the statute that the legislature did not intend to classify sewer line installation as a change in use only in those situations where the serviced buildings are on the same parcel.

We decline the litigants' invitation to engage in this type of statutory interpretation. In our view, and in the view expressed by counsel for the town at argument, the portions of this land subject to current use and those not so treated cannot be distinguished. The plaintiff voluntarily consolidated the three parcels in order to meet the density requirements for a cluster development of the size he wished to construct. In order to obtain approval for the 69 units, he had to include all 65 acres in the density calculation, as well as to commit a significant portion to open space under the zoning regulations.

■■ It is our opinion that the entire 65-acre consolidated tract is the development site. Even though the town points to the sewer line installation as the triggering event for the land use change tax, we conclude that the land underwent a change in use earlier, when an act of construction was performed on the land to begin the development of the project. RSA 79-A:7, IV(a). *See Frost v. Town of Candia*, 118 N.H. at 924, 396 A.2d at 337. Since the land value is assessed at the date of actual change in use, RSA 79-A:7, I, the town cannot be said to have waived the land use change tax irrevocably simply because it delayed assessment of the tax. *See Appeal of Town of Hollis*, 126 N.H. 230, 232, 490 A.2d 775, 777 (1985); *Frost v. Town of Candia supra.*

Our conclusion is compelled by at least two considerations. First, the purpose of the current use taxation statute is to preserve open space and deter intensive use. If, therefore, an owner desires to intensify the use of his land to the maximum extent allowable under local ordinances, he also should be prepared to accept the burden of tax on the full value of the developed land. Permitting current use treatment for land used to meet local density requirements, in

contrast, would encourage, rather than discourage, intensive use. Second, the town should not be required to subsidize the tax on the open space land when that land has been used to increase the extent of a development's market value. Nor should the town be required to subsidize the fractional ownership interests of the subsequent common owners.

The decision of the superior court upholding the assessment and denying abatement is affirmed.

*Affirmed.*

All concurred.